# LAW OFFICE OF

# TERI B. HIMEBAUGH, ESQ.
## 1400 Spring Garden St. #911
## Philadelphia, PA 19130
## (484)686-3279

thimebaughesq@earthlink.net
www.wronglyconvicted.net

July 5, 2021

RECEIVED
JUL 1 3 2021
U.S.C.A. 3rd. CIR

Third Circuit Court of Appeals
601 Market St.
Clerks Office
Philadelphia, PA 19106

RE:    In re: Jerry Frazier
       21-2095

Dear Sir or Madam:

Enclosed please find the documents that were recently requested in the Court's June 17, 2021 Order.

Should you need anything else, please let me know. Thank you.

Sincerely,

Teri B. Himebaugh, Esq.

PAE AO 241
(Rev. 05/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA



RECEIVED
JUL 1 3 2021
U.S.C.A. 3rd. CIR

### Petition for Relief from a Conviction or Sentence
### By a Person in State Custody
### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

## INSTRUCTIONS

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from conviction of the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. § 2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, see Federal Rules of Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3d Cir. 2000)).

4. Make sure the form is typed or neatly written.

5. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

6. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or argument, you must submit them in a separate memorandum.

7. You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out an Application to Proceed in District Court without Prepaying Fees or Costs. **Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.**

PAE AO 241
(Rev. 05/2018

8.      In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

9.      As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that the federal court may deny your petition on the merits even if you have not exhausted your remedies.

10.     As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that was presented in a prior habeas corpus petition.

11.     As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that was not presented in a prior habeas corpus petition unless you show:

        (A)     the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

        (B)     (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

        Before such a second or successive petition may be filed in the district court, however, the petitioner must move in the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

12.     When you have completed this form, send the original and **these instructions** to the Clerk of the United States District Court at this address:

**Clerk**
**United States District Court**
**for the Eastern District of Pennsylvania**
**601 Market Street, Room 2609**
**Philadelphia, PA 19106**

Page 3

13. **CAUTION**: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge and you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

14. **CAPITAL CASES**: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

PAE AO 241
(Rev. 05/2018

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

| United States District Court | District: **Eastern District of Pennsylvania** |
|---|---|
| Name (under which you were convicted): Jerry Frazier | Docket or Case No.: |
| Place of Confinement: SCI Camp Hill | Prisoner No.: FZ0635 |
| Petitioner (Include the name under which you you were convicted): Jerry Frazier | Respondent (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): Laurel Harry Superintendent |

**v.**

and

The District Attorney of the County of: Philadelphia

and

The Attorney General of the State of: PA

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    CCP Philadelphia

    (b) Criminal docket or case number (if you know): CP-51-CR-060/421-2008

2. (a) Date of judgment of conviction (if you know): 5/7/04

    (b) Date of sentencing: _____

3. Length of sentence: Life

4. In this case, were you convicted on more than one count or of more than one crime? ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: _____

    Murder of the 1st degree, Criminal Conspiracy + PIC

6.  (a) What was your plea? (Check one)

☑ (1)   Not Guilty          ☐ (3)   Nolo contendere (no contest)

☐ (2)   Guilty              ☐ (4)   Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury              ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes              ☑ No

8.  Did you appeal from the judgment of conviction?

☑ Yes              ☐ No

9.  If you did appeal, answer the following:

(a) Name of court: _Superior Ct_

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _8/1/6    268 EDA 2004_

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____
    _The verdict was against the weight of the evidence_

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?

☐ Yes              ☑ No

PAE AO 241
(Rev. 05/2018

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes      ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(i) Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

☐ Yes      ☐ No

10. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes      ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _CCP Philadelphia_

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _PCRA_

(5) Grounds raised: _____

_IAC_

_— Related to waiver of witness_
_Laura Garrett_

_— Failure to object to police reference_
_to Petitioners post arrest silence_

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes      ☑ No

(7) Result: _relief denied_

(8) Date of result (if you know): _8/20/08_

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _PCRA_

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _1/14/19_

(4) Nature of the proceeding: _New evid PCRA_

(5) Grounds raised: _____

_new evidence_
_Darnell Thomas / governmental interference_

_____

PAE AO 241
(Rev. 05/2018)

    (6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

          ☐ Yes      ☑ No

    (7)  Result: _Relief denied_

    (8)  Date of result (if you know): _2/14/20_

  (d)  Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

      (1)  First petition:    ☑ Yes      ☐ No

      (2)  Second petition:    ☑ Yes      ☐ No

      (3)  Third petition:    ☐ Yes      ☐ No

  (e)  If you did not appeal to the highest state court having jurisdiction, explain why you did not:

11.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

_Newly discovered evidence from Darnell Thomas_

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_See petition attached_

_Thomas was a previously unknown witness to the crime_

PAE AO 241
(Rev. 05/2018)

Page 9

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☐ Yes      ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why? _____

        _____ Witness Unknown _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

        ☑ Yes      ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition: _New evidence PCRA_____

        Name and location of the court where the motion or petition was filed: _____

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available): _____

        _____

    (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

    (4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        ☑ Yes      ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

        Name and location of the court where the appeal was filed: _Superior Ct_

        Docket or case number (if you know): _____1064 EDA 2020_

        Date of the court's decision: _1/28/21_

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes     ☐ No

   (2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

**(d) Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     ☑ Yes      ☐     No

   (2) If your answer to Question (d)(1) is "Yes," state:

     Type of motion or petition: ____

     Name and location of the court where the motion or petition was filed: ____

     _____

     Docket or case number (if you know): __

     Date of the court's decision: _____

     Result (attach a copy of the court's opinion or order, if available): _____

     _____

   (3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☐ No

   (4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☐ No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

     ☐ Yes     ☐ No

   (6) If your answer to Question (d)(4) is "Yes," state:

     Name and location of the court where the appeal was filed: _____

     _____

     Docket or case number (if you know): _____

     Date of the court's decision: _____

     Result (attach a copy of the court's opinion or order, if available): _____

     _____

     _____

   (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☐ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☐ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

PAE AO 241
(Rev. 07/10)

_____

_____

_____

(b)  If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c)  **Direct Appeal of Ground Four:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        ☐ Yes    ☐ No

    (2)  If you did not raise this issue in your direct appeal, explain why? _____

        _____

        _____

(d)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☐ Yes    ☐ No

    (2)  If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed: _____

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available): _____

        _____

    (3)  Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No

    (4)  Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

12. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

☑ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_____

_____

_____

13. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

☑ Yes        ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

USDC   Ed PA   10-1688

_____

_____

_____

14. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?

☐ Yes        ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____

_____

_____

_____

15. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Charles Mirarchi, III

_____

(b) At arraignment and plea: _____

Charles Mirarchi, III

(c) At trial: __Charles Mirarchi, III__

(d) At sentencing: __Charles Mirarchi, III__

(e) On appeal: __Jack McMahone__

(f) In any post-conviction proceeding: __Burton Rose__

(g) On appeal from any ruling against you in a post-conviction proceeding: _____
__Burton Rose__

16. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

    ☐ Yes    ☑ No

(a) If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

    ☐ Yes    ☑ No

17. **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

__Rule 60b application filed w/in 1 yr__
__of discovery of new evidence minus__
__periods of tolling in state ct__

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _hearing & Vacating of conviction_

or any other relief to which petitioner may be entitled.

_Teri B. Himebaugh_
*Signature of Attorney (if any)*

PAE AO 241
(Rev. 07/10)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____.

*(month, date, year)*

Executed (signed) on _____*July 2, 2021*_____ (date).

_____*Jerry Frazure ( by TBH)*_____
*Signature of Petitioner*

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. _____*Attorney*_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RECEIVED

JUL 1 3 2021

U.S.C.A. 3rd. CIR

JERRY FRAZIER          :
                       :          CIVIL ACTION
        v.             :
                       :          NO. 10-1688
JEFFREY BEARD, ET AL.  :

**SURRICK, J.**                                    **OCTOBER  14 , 2014**

## MEMORANDUM

Presently before the Court is Petitioner Jerry Frazier's Petition for Writ of Habeas Corpus

(ECF No. 1) and Objections (ECF No. 12) to the Report and Recommendation of Magistrate

Judge Henry S. Perkin (ECF No. 10). For the following reasons, Petitioner's Objections will be

overruled, the Report and Recommendation will be approved and adopted, and the Petition for

Writ of Habeas Corpus will be denied and dismissed.

## I.  BACKGROUND

Petitioner Jerry Frazier was sentenced to life in prison on September 27, 2004, for first-

degree murder, criminal conspiracy, and possession of an instrument of crime. He was convicted

by a jury for the 2003 murder of Jose Oquindo. Petitioner was found to have called to Oquindo,

saying "Jose, come here, let me talk to you." When Oquindo approached, Petitioner and two

other men drew guns and began shooting. Oquindo died from his wounds less than an hour later.

Oquindo's fiancé, Wanda Figueroa, testified at trial that she had seen two men chasing

Oquindo back to the house but was unable to identify who was shooting at him because she had

ducked back into the house. George Medina, who had known Petitioner since childhood,

testified that he had heard someone call to Oquindo before the shooting but was unable to

identify who had done so. However, in a 911 call placed by Medina, a recording of which was played for the jury, Medina is heard saying that "Man Man [a nickname for Petitioner] called him." Another witness testified that he saw Petitioner call to Oquindo, ask him, "What's the beef between you and my man?," and draw a gun, at which point Petitioner and the two other men began firing at Oquindo.

Petitioner filed an appeal in the Pennsylvania Superior Court, and the trial court issued an order instructing him to file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Petitioner failed to do so; as a result, the trial court issued an opinion concluding that the appeal should be dismissed. Appellant subsequently filed a motion seeking remand so he could file a 1925(b) statement. The Superior Court granted the motion. Petitioner's appeal presented a single issue for review: whether the verdict was against the weight of the evidence. The Superior Court concluded that this issue was not properly preserved, but that even if it had been, "[t]he jury was free to credit the testimony of the eyewitness and the decision to do so does not shock our sense of justice . . . ." *Comm. v. Frazier*, No. 2682 EDA 2004, slip op. at 3-5 (Pa. Sup. Ct. Aug. 1, 2006) (nonprecedential). The court affirmed the judgment of sentence. *Id.* at 5.

Petitioner then filed a petition under the Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541 *et seq.* ("PCRA"), arguing that trial counsel had been ineffective for failing to call Laura Garrett as a witness and failing to object to a prosecution witness' reference to Petitioner's post-arrest silence. The PCRA court denied the petition without a hearing, and Petitioner appealed. The Superior Court affirmed, concluding that Petitioner had waived his right to call witnesses during a colloquy with the trial court, and that the court's instruction to the jury that Petitioner's silence was not to be held against him prevented the witness' statement from

prejudicing him. *Comm. v. Frazier*, No. 2612 EDA 2008, slip op. at 4-7 (Pa. Sup. Ct. Aug. 20, 2008).

Petitioner filed the instant Petition for Writ of Habeas Corpus, and we referred the Petition to Magistrate Judge Henry S. Perkin for preparation of a Report and Recommendation. The Petition raises the same issues that were raised before the Superior Court. Magistrate Judge Perkin filed his Report and Recommendation on September 12, 2012 (R. & R., ECF No. 10), and Petitioner submitted his objections thereto on September 25, 2012. (Pet.'s Obj., ECF No. 12.)

## II.     LEGAL STANDARD

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). We review *de novo* those portions of the Magistrate Judge's R&R to which specific objections have been made. *Id.*; Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 141-42 (1985) ("[A] United States district judge may refer . . . petitions for writ of habeas corpus[] to a magistrate, who shall conduct appropriate proceedings and recommend dispositions . . . . [A]ny party that disagrees with the magistrate's recommendations may serve and file written objections to the magistrate's report, and thus obtain *de novo* review by the district judge.") (internal quotation marks omitted).

## III.     DISCUSSION

The Report and Recommendation concluded that all of Frazier's claims should be dismissed or denied, and that no certificate of appealability should issue. (R. & R. 1.) We will address each specific objection.

### A.     Failure to Call Laura Garrett as a Witness

Petitioner argues that trial counsel's failure to call Laura Garrett as an exculpatory witness constitutes ineffective assistance of counsel. According to Petitioner, Garrett would

have testified that while the shots were being fired she saw Petitioner running away from the area
with no weapon in his hand.

A petitioner alleging ineffective assistance of counsel has a heavy burden. Under
*Strickland v. Washington,* 466 U.S. 668, 689 (1984), counsel is presumed to have acted within
the range of "reasonable professional assistance," and the defendant bears the burden of
"overcom[ing] the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy." *Id.* (internal quotation marks omitted). To establish ineffective
assistance of counsel in violation of the Sixth Amendment, Petitioner must show that: (1) his
attorney's performance was deficient; and (2) the deficient performance prejudiced his defense.
*Id.* at 687. To establish deficient representation, Petitioner must demonstrate that his trial
counsel's performance "fell below an objective standard of reasonableness under prevailing
professional norms." *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir. 1999) (quoting *Strickland,*
466 U.S. at 688). To establish prejudice, Petitioner must show that "counsel's errors were so
serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at
687. "It is not enough for the defendant to show that the errors had some conceivable effect on
the outcome of the proceeding." *Id.* at 693. Rather, "the defendant must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be
highly deferential" as "[t]here are countless ways to provide effective assistance in any given
case." *Strickland,* 466 U.S. at 689.

Where, as here, a habeas corpus petition challenges a claim that was adjudicated on the
merits in state-court proceedings, the petition may only be granted if the state-court's
adjudication of the claim "resulted in a decision that was contrary to, or involved an

4

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States" or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d). Petitioner's burden is particularly high in this matter because *Strickland* and

§ 2254(d) "are both highly deferential and when the two apply in tandem, review is 'doubly' so.

. . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788 (2011) (citations

and internal quotation marks omitted). Further, the Supreme Court has observed that:

> [a]n ineffective-assistance claim can function as a way to escape rules of waiver
> and forfeiture and raise issues not presented at trial, and so the *Strickland* standard
> must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten
> the integrity of the very adversary process the right to counsel is meant to serve.

*Id.* at 788 (citing *Strickland,* 466 U.S. at 689–90).

Petitioner cannot satisfy this high standard. He argues that the trial court's colloquy with

Petitioner did not waive his right to argue that counsel was ineffective because the colloquy

referred to his right to testify in his own defense, with only a passing mention of his right to call

other witnesses. (Pet.'s Reply 6, ECF No. 9.) However, the transcript of the colloquy does

establish that the trial court did in fact inform Petitioner of his right to call other witnesses:

THE COURT: There are witnesses you can also call; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And it's your decision also not to call witnesses?

THE DEFENDANT: Yes.

THE COURT: You're doing that of your own free will?

THE DEFENDANT: Yes.

5

THE COURT: Again, no threats or promises were made to get you to do that?

THE DEFENDANT: No.

THE COURT: After discussing this with your attorney, that's what you both decided on?

THE DEFENDANT: Absolutely.

(*Id.* at 5-6.) The trial court made it abundantly clear that Petitioner had the right to call witnesses on his behalf, and Petitioner likewise made it clear that he did not wish to do so. Petitioner argues that he "did not state that he had discussed with counsel whether he should present specific defense witnesses, and none were identified during the colloquy (including Ms. Garrett)." (*Id.* at 6.) Petitioner cites no authority for the proposition that a trial court must list every potential defense witness in a colloquy with a defendant for the waiver to be knowing and intelligent, and we are aware of none. It was therefore not an "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), for the Superior Court to conclude from this colloquy that Petitioner had knowingly and intelligently waived his right to call *any* witnesses, including Garrett.

Moreover, we conclude that Petitioner is not prejudiced from the failure to call Garrett. Her testimony merely would have been duplicative of her husband George Medina's testimony that he had seen Petitioner without a gun in the immediate aftermath of the shooting. In addition, Garrett's testimony that she had not seen a gun in Petitioner's hand would not have been exculpatory. *See Kee v. Sec'y of D.O.C.*, No. 07-4571, 2008 WL 5429697, at *8 (E.D. Pa. Sept. 5, 2008), approved and adopted by No. 07-4571, 2008 WL 5429697 (E.D. Pa. Dec. 30, 2008) ("[The witness] stated that [he] did not see petitioner with a gun, but this contention does not demonstrate that petitioner did not execute the shooting.").

6

Finally, there is no reason to conclude that the PCRA court's decision not to hold an

evidentiary hearing regarding counsel's strategy, and the Superior Court's affirmance of that

decision, was "contrary to, or involved an unreasonable application of, clearly established

Federal law." 28 U.S.C. § 2254(d)(1). The Third Circuit Court of Appeals has made it clear that

"evidentiary hearings regarding counsel's strategy will not be required in all cases, as the

objective reasonableness inquiry may obviate the need for such a hearing." *Thomas v. Varner*,

428 F.3d 491, 501 n.10 (3d Cir. 2005). Similarly, our conclusion that Petitioner was not

prejudiced by trial counsel's failure to call Garrett as a witness renders moot any investigation

into counsel's strategy at trial. *See Schriro v. Landrigan*, 550 U.S. 465, 481 (2007) (finding no

abuse of discretion where district court refused to hold evidentiary hearing in ineffective-

assistance claim in which petitioner had declined to offer mitigation evidence during death-

penalty sentencing). We therefore find no fault in the PCRA court's decision to not hold an

evidentiary hearing.

**B.      Failure to Object to a Witness' Comment about Petitioner's Silence**

Petitioner next contends that trial counsel was ineffective because he failed to object or

request a limiting instruction when a witness stated during the prosecution's redirect that

Petitioner had not said anything after his arrest. The question that elicited this response came

after the following exchange during defense counsel's cross-examination of the arresting officer:

Q. You went up to [Petitioner], right?

A. Yes.

Q. You identified yourself, right?

A. Yes, we were in full uniform.

Q. He didn't run, did he?

A. No.

Q. He didn't give you a hard time, correct?

A. No.

Q. You, in fact, said he had no weapons on him; did he?

A. No.

[ . . . ]

Q. And he took out his ID and showed it to you; right?

A. Yes.

Q. And you had his ID and his address, and he didn't try to run.  He says, "What's this about?"  And you said, "You're under arrest for murder."  Right?

A. I told him we were taking him down to Homicide.

(Gov't's Resp. 10-11, ECF No. 8.)  The prosecution asked one question of the officer on redirect:

Q. What was [Petitioner's] reaction when you said you were taking him to homicide?

A. He didn't say anything.

Q. Nothing further.

(*Id.* at 8.)  The Superior Court found that Petitioner had suffered no prejudice from the failure to object because the trial court had instructed the jury that it was not to make any adverse inference from Petitioner's choice to remain silent.  The Superior Court also remarked that the strength of the Commonwealth's case against Petitioner made it highly unlikely that this fleeting reference to his post-arrest silence resulted in prejudice.  *Frazier*, No. 2612 EDA 2008, slip op. at 4-7.

The Report and Recommendation concludes that Petitioner cannot show that the Superior Court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law.  (R. & R. 20.)  We agree.  Petitioner argues that the trial court's jury instruction regarding Petitioner's silence "related exclusively to the Petitioner's decision not to

take the stand on his own behalf at the trial, and did not cure the error that occurred as the result of the improper testimony of [the] officer." (Pet.'s Obj. ¶ 2(b).)  However, we "presume that juries follow instructions . . . and the time lapse between the testimony and the curative instruction here was not long enough to overcome that presumption." *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).  We are satisfied that the jury understood that the trial court's instruction meant that Petitioner's post-arrest silence could not be held against him.

Even if it were otherwise, we agree with the Report and Recommendation and the Superior Court that trial counsel could not have objected to the officer's statement.  Trial counsel elicited responses from the officer on cross-examination that were designed to show that Petitioner was calm and cooperative when reacting to his arrest.  We agree that this was a reasonable strategy.  It also opened the door to the question by the prosecutor and the response that Petitioner had said nothing upon learning that he was being brought to homicide. *See Comm. v. DiNicola*, 866 A.2d 329, 335-36 (Pa. 2005) (finding that prosecution's elicitation of testimony about defendant refusing interview was a fair response to defense counsel's argument).

For the foregoing reasons, we agree with Magistrate Judge Perkin and the Superior Court that Petitioner's arguments regarding ineffective assistance of counsel are without merit.

### C.    Certificate of Appealability

A certificate of appealability only issues if reasonable jurists could disagree with the Court's disposition of the matter. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  No reasonable jurist could disagree with our conclusion that Petitioner's claims are meritless.  No certificate of appealability will issue.

## IV.    CONCLUSION

After a *de novo* review of the record, the Objections filed by Jerry Frazier will be overruled, and the Report and Recommendation will be approved and adopted.  Frazier's Petition will be denied, and no certificate of appealability will issue.

An appropriate Order will follow.

BY THE COURT:

_____
**R. Barclay Surrick, U.S.D.J.**



RECEIVED
JUL 1 3 2021
U.S.C.A. 3rd. CIR

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254

(eff. 12/1/04)

JERRY FRAZIER _____ PETITIONER
(Full Name)   (Include name under which you were convicted)

vs.          Case No._____

(Supplied by the Court)

JEFFREY BEARD, ET AL _____ RESPONDENT
(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner)
and
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA _____

and
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA _____

ADDITIONAL RESPONDENT

JERRY FRAZIER _____          FZ-0635 _____
Name                                        Prison Number

SCI MAHANOY, FRACKVILLE, PA 17932 _____

Place of Confinement

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

INSTRUCTIONS–READ CAREFULLY

1. You must include all potential claims and supporting facts for which you might desire to seek review because a second or successive habeas corpus petition cannot be filed except under very specific and rare circumstances requiring certification by the Third Circuit Court of Appeals as set forth in instruction # 13.

2. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. §2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, see Federal Rules of

Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, see United States v. Thomas, 221 F. 3d 430 (3d Cir.2000.)

3. Any false statement of a material fact in your petition, in a motion for leave to proceed in forma pauperis, or in any other motion you file in this case may serve as the basis for prosecution and conviction for perjury.

4. This petition must be typewritten, printed, or legibly handwritten and signed by you as the petitioner or by your representative on Page 11. You should answer all questions concisely in the proper space of the petition. If you need more room to answer any question, you may write on the reverse blank sides of the petition.

5. You may not attach additional pages to the petition. You do not have to list or cite the cases or law that you are relying on. If you do want to cite the cases and law you are relying on and make legal arguments, you should do so in a separate concise brief or memorandum which should be filed along with the petition.

6. When you file your petition, you must include a filing fee of $5.00. If you cannot pay the full filing fee, you must request permission to proceed in forma pauperis as explained in instruction # 8.

7. Your petition will be filed if you have followed these instructions and it is in proper order.

8. To request permission to proceed in forma pauperis without paying the full filing fee, you must completely fill out pages 12 through 18 of the petition. You should answer all questions and sign where indicated on Pages 12 and 18. You should see to it that an authorized prison official completes the certification on Page 19. You must prove that you cannot pay the full filing fee and other costs because of poverty and a discharge in bankruptcy will not excuse you from this requirement. The Court will let you know if you may proceed in forma pauperis.

9. Only final judgments entered by one state court may be challenged in a single petition. If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

10. As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that if it is perfectly clear that no colorable claims are presented, the federal court can also deny your petition on the merits.

11. As required by 28 U.S.C. § 2254(e)(1), a federal court, when considering your habeas corpus petition, must deem as correct a determination of fact made by a state court unless you rebut the presumption of correctness by clear and convincing evidence. Under 28 U.S.C. § 2254(e)(2), if you have failed to develop the factual basis of a claim in state court proceedings, a federal court cannot hold an evidentiary hearing on that claim unless you show that:

(i) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable, or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.

You must also show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

12. As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was* presented in a prior habeas corpus petition.

13. As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that *was not* presented in a prior habeas corpus petition unless you show:

(A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

Before such a second or successive petition may be filed in the district court, however, the petitioner must move the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

14. 28 U.S.C. § 2254(i) provides that ineffectiveness of counsel during post-conviction, habeas corpus and P.C.R.A. proceedings in state or federal court may not be grounds for relief in your petition.

15. When the petition is fully completed, the **original and four copies** must be mailed to the **Clerk of the United States District Court, Room 2609, 601 Market Street, Philadelphia, PA 19106.** You must return all pages, including these instructions.

## PETITION

1. (a)  Name and location of court which entered the judgment of conviction under attack:

   _____Court of Common Pleas of Philadelphia_____

   (b)  Name of Prosecutor: District Attorney Seth Williams_____

   (c)  Prosecution conducted by District Attorney's Office of____Philadelphia_____
        County

2. (a)  Date of Judgment of conviction: _May 7, 2004_____

   (b)  Indictment number or numbers:__CP-51-CR-0601421-2008_____

   Term:_____ Criminal Case Number:_____

3. Length of sentence:__Life_____ Sentencing Judge:__Harold Kane_____

4. Nature of offense or offenses for which you were convicted: _____

   ___Murder of the First Degree, Criminal Conspiracy and Possession of an Instrument of Crime_

   _____

5. What was your plea? (Check one)
   (a) Not guilty (X)  (b) Guilty ( )   (c) Nolo contendere ( )

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   indictment, give details:_____

   _____

   _____

6. **If you pleaded not guilty,** what kind of trial?: (Check one)   (a) Jury (X)   (b) Judge only ( )

7. Did you testify at the trial?  Yes ( )  No ( X )

8. Did you appeal from the judgment of conviction?   Yes ( X )  No ( )

9. If you did appeal, answer the following:

   (a) Name of court: Superior Court of Pennsylvania_____

(b) Result: __Judgment of Sentence affirmed__

(c) Date of result and citation, if known: __8/1/06 #268 EDA 2004__

(d) Grounds raised: __The verdict was against the weight of the evidence__

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

    (1) Name of court:__N/A__

    (2) Result: _____

    (3) Date of result and citation, if known: _____

    (4) Grounds raised: _____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

    (1) Name of court: __N/A__

    (2) Result: _____

    (3) Date of result and citation, if known: _____

    (4) Grounds raised: _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?    Yes ( X )  No ( )

11. If your answer to 10 was "yes," give the following information:

    (a)  (1) Name of Court: __Court of Common Pleas of Philadelphia__

        (2) Nature of proceeding: __Post Conviction Relief Act__

        (3) Grounds raised: __Ineffective assistance of counsel__

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )  No ( X )

(5) Result: __PCRA relief denied.__

(6) Date of result: __8/20/08__

(7) Did you appeal the result to a higher court?     Yes ( X )  No ( )

Court Name(s) __Superior Court of Pennsylvania__

Result(s) __Order affirmed #2612 EDA 2008__

Result Date(s) __9/23/09__

(b) As to any second petition, application or motion give the same information:

(1) Name of Court: __N/A__

(2) Nature of proceeding: _____

_____

(3) Grounds raised: _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )  No ( )

(5) Result: _____

_____

_____

(6) Date of result: _____

(7) Did you appeal the result to a higher court?     Yes ( )  No ( )

Court Name(s) _____

Result(s) _____

Result Date(s)_____

(c) As to any <u>third petition</u>, application or motion give the same information:

    (1) Name of Court: _____N/A_____

    (2) Nature of proceeding:_____

    _____

    (3) Grounds raised: _____

    _____

    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ( )  No ( )

    (5) Result:_____

    _____

    _____

    (6) Date of result:_____

    (7) Did you appeal the result to a higher court?    Yes ( )  No ( )

    Court Name(s)_____

    Result(s)_____

    Result Date(s)_____

(d) If you did ***not*** appeal from the adverse action on any petition, application or motion,
    explain briefly why you did not:
    _____N/A_____

    _____

    _____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Give specific facts supporting each ground.

*CAUTION:* In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

- (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
- (b) Conviction obtained by use of coerced confession.
- (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).
- (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim).
- (e) Conviction obtained by a violation of the privilege against self-incrimination.
- (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
- (g) Conviction obtained by a violation of the protection against double jeopardy.
- (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
- (i) Denial of effective assistance of counsel.
- (j) Denial of right of appeal.

A. Ground one: Denial of effective assistance of counsel in failing to call an exculpatory

eyewitness at trial.

Supporting FACTS (state *briefly* without citing cases or law):

PCRA petition denied without a hearing, despite affidavit of Laura Garrett averring that she could have testified that the Petitioner was not the shooter, based on Petitioner's "waiver" of right to call defense witnesses at trial, which Petitioner submits cannot support that result.

B. Ground two:   Denial of effective assistance of counsel in failing to object to police reference

to Petitioner's post-arrest silence.

Supporting FACTS (state *briefly* without citing cases or law):

 Arresting officer testified on redirect examination that upon arrest, after being told he was being taken to Homicide, Petitioner "didn't say anything", to which trial counsel did not object, thereby violating Petitioner's constitutional rights, even though Petitioner did not testify at trial; and error was not harmless.

C. Ground three:_____

_____

Supporting FACTS (state *briefly* without citing cases or law):

_____

_____

_____

D. Ground four:_____

_____

Supporting FACTS (state *briefly* without citing cases or law):

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?    Yes ( )  No (X)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a)  At preliminary hearing: Charles Mirarchi, III, Esquire

   (b)  At arraignment and plea: Charles Mirarchi, III, Esquire

   (c)  At trial:   Charles Mirarchi, III, Esquire

   (d)  At sentencing:   Charles Mirarchi, III, Esquire

   (e)  On appeal:   Jack McMahon, Esquire

     1500 Walnut Street, Suite 1100, Philadelphia, PA 19102

   (f)  In any post-conviction proceeding:   Burton A. Rose, Esquire

     1731 Spring Garden Street, Philadelphia, PA 19130

   (g)  On appeal from any adverse ruling in a post-conviction proceeding :

     Burton A. Rose, Esquire

     1731 Spring Garden Street, Philadelphia, PA 19130

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes (X)  No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?                    Yes ( )  No (X)

   (a)  If so, give name and location of court which imposed sentence to be served in the future:

(b) And give date and length of sentence to be served in the future: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?   Yes ( )  No ( )

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____4 - 11 - 10_____          _____
                        Date                                  Petitioner's Signature or
                                                    Signature of Petitioner's Representative
                                                              JERRY FRAZIER

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)
BURTON A. ROSE, ESQUIRE
1731 Spring Garden Street
Philadelphia, PA 19130
(215) 564-5550

RECEIVED
JUL 1 3 2021
U.S.C.A. 3rd. CIR

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY FRAZIER, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | NO. 10-1688 |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Respondents. | : | |

Henry S. Perkin, M.J.

September 12, 2012

## REPORT AND RECOMMENDATION

Presently before the Court is the counseled Petition for Writ of Habeas Corpus filed by the Petitioner, Jerry Frazier ("Petitioner"), pursuant to 28 U.S.C. section 2254. Petitioner is incarcerated in the State Correctional Institution located in Frackville, Pennsylvania. The Response to Petition for Writ of Habeas Corpus was filed February 17, 2012 and Petitioner's Reply to the Response was filed on February 23, 2012. For the reasons that follow, it is recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

## I.    PROCEDURAL HISTORY.[1]

The Petitioner is serving a life sentence imposed on September 27, 2004 by the Honorable Harold Kane of the Court of Common Pleas of Philadelphia following a jury trial. Petitioner was convicted of Murder of the First Degree, Criminal Conspiracy and Possession of

---

[1]    This information is taken from the documents of record in this case. The four volumes of trial transcripts were not included in the state court record received from the Philadelphia Court of Common Pleas, however, Respondents' counsel provided them electronically at the Court's request.

an Instrument of Crime.[2]  At trial, Petitioner was represented by Charles P. Mirarchi, III, Esquire.

Petitioner was represented by Jack McMahon, Esquire, in his direct appeal with the Pennsylvania

Superior Court filed on September 28, 2004.  The trial court issued a November 10, 2004 order

instructing Petitioner to file a statement of matters complained of on appeal pursuant to

Pa.R.A.P. 1925(b) ("1925(b) statement").  Petitioner failed to comply with the order, and on May

19, 2005, the trial court issued an opinion concluding the appeal should be dismissed.  Petitioner

then filed a motion seeking a remand of the matter so he could file a Rule 1925(b) statement.  On

June 17, 2005, the Pennsylvania Superior Court gave Petitioner an additional fourteen (14) days

to file his 1925(b) statement.  On July 1, 2005, Petitioner filed his appeal, raising the single issue

that the verdict was against the weight of the evidence because only one witness identified

Petitioner and two other eyewitnesses stated that Petitioner was not present at the time of the

shooting.

On direct review, the Superior Court held on August 1, 2006, that Petitioner failed

to properly preserve this issue for two reasons:

> First, a challenge to the weight of the evidence must be raised in the first instance
> by written motion prior to sentencing, written motion after sentencing, or orally
> prior to sentencing.  Pa.R.Crim.P. 607, **Challenges to the Weight of the**

---

[2]       On direct appeal, the Pennsylvania Superior Court set forth the following facts regarding the
charges against Petitioner:

> The underlying facts, as gleaned from the affidavit of probable cause follow.  At approximately
> 11:20 p.m. on the evening of March 15, 2003, appellant was standing outside of a bar in
> Philadelphia when he spotted Jose Oquindo peering out his front door.  Appellant called out:
> "Jose, come here I want to talk to you." Oquindo walked down to the bar where he was confronted
> by appellant, who was accompanied by two unidentified men.  Appellant asked Oquindo, "What's
> your problem with my man?" and then appellant and his companions immediately drew handguns
> and opened fire on Oquindo, who attempted to run back to his house.  Oquindo collapsed on the
> sidewalk leading to the steps of his front porch and died before he could get to safety.

Resp., Ex. A, pp. 1-2.

**Evidence.** The failure to preserve a challenge to the weight of the evidence results in waiver. *Commonwealth v. Washington*, 825 A.2d 1264, 1266 (Pa. Super. 2003). The docket entries do not reveal nor does the certified record include any evidence appellant filed a motion challenging the weight of the evidence prior to originally filing an appeal with this Court on September 28, 2004. Further, there is no evidence a weight of the evidence challenge was raised orally prior to sentencing and the trial court's Opinion says nothing about an oral motion challenging the weight of the evidence. Moreover, appellant fails to demonstrate how he preserved this claim, even though it is incumbent upon him to do so.Fn7

> Fn7 Appellant could have addressed the Commonwealth's waiver argument and pointed out how and where the issue was preserved for review by filing a reply brief pursuant to Pa.R.A.P. 2113, **Reply Brief**.

Appellant also waived his argument by failing to serve the trial court with a copy of his statement of matters complained of on appeal as required by Pa.R.A.P. 1925(b) ("The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of."). The trial court states that it was never served with appellant's Rule 1925(b) statement filed on July 1, 2005 pursuant to this Court's Order. Trial Court Opinion, Kane, J., 11/7/05, at 1-2.

The certificate of service attached to appellant's Rule 1925(b) statement in the record lists the address where Judge Kane was served with the statement merely as "City Hall." Record, No. D-7. Tellingly, the reproduced certificate of service has the words "City Hall" scratched out and the address "1401 Criminal Justice Center" interlineated by hand. R.R. at Appendix. It is apparent appellant failed to serve Judge Kane in accordance with the Rules of Appellate Procedure.

In as much as appellant has failed to preserve his issue, violating this Court's Order in the process, we have no qualms with finding this issue waived. Recognizing the gravity of appellant's situation, however, we also note that even had the claim properly been preserved it has no merit. Appellant contends the jury erred by believing the testimony of an eyewitness to the shooting who testified appellant was the shooter when two other witnesses were unable to identify the shooter. The jury was free to credit the testimony of the eyewitness and the decision to do so does not shock our sense of justice, especially considering that even though the other witnesses were *unable to identify* appellant as one of the actual shooters, one of them placed appellant at the crime scene. *See generally, Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005).

3

Judgment of sentence affirmed.

Resp., Ex. A, pp. 3-5.

Petitioner filed a counseled PCRA petition on June 26, 2007. The PCRA court denied the petition without a hearing on August 20, 2008, and the notice of appeal was filed on September 4, 2008. On October 27, 2008, the PCRA court ordered petitioner to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) ("1925(b) statement") within twenty-one (21) days, and petitioner filed a timely 1925(b) statement was filed on November 6, 2008. On December 22, 2008, the PCRA court issued a decision for the benefit of the Superior Court, stating:

> Petitioner claims that trial counsel was ineffective for failing to call Laura Garrett as a witness at trial to testify that petitioner had no weapon in his hand when she saw him running from the scene of the shooting and that she saw two shooters, neither of whom was petitioner.

> The law in Pennsylvania presumes that counsel was effective. *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). When evaluating claims of ineffective assistance of counsel, the first issue to be determined is whether the issue underlying the claim has arguable merit. *Commonwealth v. Johnson*, 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim has merit, it must be determined whether counsel's course of action or inaction had a reasonable basis to further the defendant's interests. *Commonwealth v. Copenhefer*, 526 Pa. 555, 587 A.2d 1353 (1991). If no reasonable basis for counsel's course of action exists, appellant will be granted relief only if he demonstrates that counsel's improper course of conduct prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 159, 527 A.2d 973, 975 (1987). Prejudice in this context has been defined to mean that a petitioner must establish that, but for the arguably ineffective act or omission of counsel, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v Jones*, 546 Pa. 161, 683 A.2d 1181 (1996)[]; *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994). Petitioner bears the burden of proving all three prongs of this standard. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992).

> When counsel's ineffectiveness is premised on his or her failure to call witnesses, it must be established that: (1) the witness existed; (2) the witness was available; (3) counsel knew or should have known of the witness; (4) the witness was willing to testify on petitioner's behalf at trial; and (5) the absence of the witness's testimony prejudiced petitioner. See, e.g., *Commonwealth v. Smolko*, 446 Pa.Super. 156, 171, 666 A.2d 672, 679 (1995).

4

Petitioner's claim fails for two reasons. First, the record shows that despite Ms. Garrett's presence at trial, the defense rested without calling her after petitioner was fully advised of his right to present witnesses at trial. Accordingly, this issue is waived where the record shows that petitioner agreed with defense counsel's decision not to call any defense witnesses. Second, even had the claim not been waived, it would still fail where Ms. Garrett's proposed testimony would have been merely cumulative of the testimony given by her husband, George Medina, that he saw two shooters, neither of whom was the petitioner.[FN1] Accordingly, petitioner cannot demonstrate that he was prejudiced by the absence of Ms. Garrett's testimony.

FN1. Wanda Figeroa, the victim's finacee [sic], also testified that she observed two men chasing the victim, neither of whom she identified as petitioner.

Petitioner next claims that the court erred in denying post-conviction relief on grounds that trial counsel was ineffective where counsel failed to object to what petitioner characterizes as a reference to his post-arrest silence. This claim lacks merit where trial counsel had no proper basis to object to the complained of testimony. On cross-examination of the arresting officer, trial counsel elicited from the officer that petitioner was cooperative when arrested. On re-direct examination, the prosecutor inquired about petitioner's reaction when the officer advised him that he was being taken to homicide. The officer responded that petitioner "didn't say anything". As trial counsel opened the door to the prosecutor's re-direct examination concerning petitioner's behavior when arrested for this case, counsel had no basis upon which to object to this question or answer. Further, petitioner cannot show prejudice from this isolated, passing reference to his silence, particularly where overwhelming evidence of his guilt was presented at trial.

Resp., Ex. B, p.3; Commonwealth v. Frazier, No. CP-51-CR-0601421-2003, 2008 WL 7279880 (Pa. Com. Pl. Dec. 22, 2008). Petitioner, represented by Burton A. Rose, Esquire, who also represents Petitioner in the instant federal habeas action, filed a timely appeal in the Superior Court, raising two issues:

1. Did the lower court err in granting the Commonwealth's Motion to Dismiss this PCRA Petition without a hearing where there were genuine issues concerning material facts with respect to Appellant's claim that trial counsel provided ineffective assistance of counsel under the federal and state constitutions by failing to present the testimony of eyewitness Laura Garrett?

5

2. Did the lower court err in granting the Commonwealth's Motion to Dismiss this PCRA hearing [sic] without a hearing with respect to the Appellant's claim that trial counsel provided ineffective assistance of counsel under the federal and state constitutions by failing to object, or request a cautionary instruction, concerning police testimony that upon his arrest, the Appellant "did not say anything" when told he was being taken to homicide?

See Resp., Ex. C, pp. 2-3. The Superior Court found these claims meritless in the following analysis:

In his first issue, appellant claims that the trial court erred in not conducting an evidentiary hearing to inquire as to whether trial counsel was ineffective in failing to call a certain exculpatory eyewitness. Our standard of review regarding a PCRA court's decision not to conduct an evidentiary hearing is abuse of discretion. **Commonwealth v. Miller**, 585 Pa. 144, 888 A.2d 624 (2005). There was no need for an evidentiary hearing on this claim because under settled case law, appellant waived his right to challenge counsel's effectiveness on this basis. At trial, the court conducted a colloquy with appellant wherein he waived his right to call witnesses:

> THE COURT: There are witnesses you can also call; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it's your decision also not to call witnesses?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're doing that of your own free will?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Again, no threats or promises were made to get you to do that?
>
> THE DEFENDANT: No.
>
> THE COURT: After discussing this with your attorney, that's what you both decided on?[FN2]
>
> THE DEFENDANT: Absolutely.

6

FN2 In his brief, appellant argued that his colloquy was insufficient to waive this issue because appellant had not stated in the colloquy whether he had discussed this matter with his attorney. (Appellant's brief at 11, footnote 1.) Appellant has misread the notes of testimony.

Notes of testimony, 5/6/04 at 42.

As noted by the Commonwealth, "[a] defendant who voluntarily waives the right to call witnesses during a colloquy cannot later claim ineffective assistance and purport that he was coerced by counsel." *Commonwealth v. Lawson*, 762 A.2d 753, 756 (Pa.Super. 2000), *appeal denied*, 566 Pa. 638, 781 A.2d 141 (2001). Likewise, an appellant cannot later complain that counsel was ineffective in calling such witnesses.

In a reply brief, appellant argues that the *Lawson* holding was limited to a situation wherein an appellant waives his own right to testify and did not involve a waiver of a right to call witnesses. Appellant has plainly misread *Lawson*. While *Lawson* did address the waiver of a defendant's own right to testify, it also involved the waiver of a right to call other witnesses:

> Appellant's third claim is that trial counsel was ineffective for failing to investigate and present witnesses on behalf of appellant. At the outset, we note that during a colloquy with the trial court, appellant declined to present witnesses on his behalf. *See* N.T. Trial, 5/19/99, at 82-82. As we stated earlier, a voluntary waiver of testimony bars a claim of ineffective assistance for failure to testify. *See Fletcher*, 750 A.2d at 274-75. We extend the analysis used in *Spells*, *Wallace*, *Schultz*, *Fletcher* and their progeny to apply to waiver of witness testimony. A defendant who voluntarily waives the right to call witnesses during a colloquy cannot later claim ineffective assistance and purport that he was coerced by counsel.

*Lawson*, 762 A.2d at 756. There is no merit in appellant's first issue.

In his second issue, appellant complains that the PCRA court erred in not conducting an evidentiary hearing as to counsel's ineffectiveness in not objecting to a police witness' reference to appellant's post-arrest silence. In order to address the PCRA court's discretion in this regard, we must first reiterate the test for ineffective assistance: appellant is required to make the following showing in order to succeed with such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been

7

different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of this test will cause the entire claim to fail. *Commonwealth v. Bridges*, 584 Pa. 589, 886 A.2d 1127 (2005). Counsel is presumed to be effective, and appellant has the burden of proving otherwise. *Commonwealth v. Pond*, 846 A.2d 699 (Pa. Super. 2004).

Appellant is correct that a defendant has a constitutional right to remain silent and that it is a violation of that right to make reference at trial to post-arrest silence. *Commonwealth v. Costa*, 560 Pa. 95, 742 A.2d 1076 (1999). As in this case, the appellant in *Costa* raised a claim of ineffective assistance of counsel for failing to object to a reference to post-arrest silence. As *Costa* illustrates in finding counsel ineffective, the slightest reference can be found to require reversal of the conviction:

> [D]uring appellant's trial, the following testimony was elicited by the prosecutor during direct examination of a police detective who was testifying regarding his investigation of the molestation of Terry Foster, one of the boys who claimed to have been molested by appellant:
>
> Q.    When were the charges filed against the defendant for his alleged sexual abuse of Terry Foster?
>
> A.    That would have been August 23rd of 1993.
>
> Q.    Did the defendant say anything to you when these charges were filed?
>
> A.    No.

*Id.*, 560 Pa. at 97, 742 A.2d at 1077.

Instantly, the reference was equally fleeting. Following defense counsel's cross-examination of the arresting officer, in which counsel highlighted appellant's apparently innocent reactions to being approached by police, the district attorney asked a single question, inquiring what appellant's reaction was when the officer told him he was taking him to homicide. In response, the officer replied, "He didn't say anything." (Notes of testimony, 5/5/04 at 167.)

Nonetheless, we note that *Costa* also recognized that because of the nature of the inquiry, whether counsel was ineffective in failing to object, not only must the issue have underlying merit and have no possible reasonable basis, but also prejudice must accrue to the defendant. Thus, *Costa* went on to assess whether the reference to post-trial silence was harmless and found that it was not.

In *Costa*, three boys testified that defendant sexually molested them and appellant testified in his own defense denying the charges. The court correctly

8

noted that not only did the post-arrest silence testimony raise an adverse inference of guilt, it also impeached the defendant's testimony at a trial where credibility was pivotal, giving jurors the opportunity to conclude that if appellant were innocent, he would not have waited until trial to assert his innocence. In the case presently before us, however, this is not the situation.

In the present case, appellant remained silent at trial also, choosing not to testify (or present any evidence whatsoever), and his credibility was, therefore, not at issue. Further, the trial court specifically instructed the jury that it was to make no adverse inference from this choice to remain silent. (Notes of testimony, 5/6/04 at 134-135.)

Moreover, the case against appellant was strong. An eyewitness, who had known appellant from the neighborhood for some time, described unequivocally how appellant called the victim across the street and then, as the victim approached, drew a firearm and began shooting the victim. (Notes of testimony, 5/5/04 at 69-71, 74-76.) The witness stated that as the victim turned to flee, appellant and two other men chased the victim, shooting at the victim and continuing to do so even after the victim's wife appeared at her doorway screaming for the assailants to stop shooting. (*Id.* at 76-77.) The victim's wife was able to corroborate much of this testimony, except as to the identity of the assailants. Under these circumstances, we find that unlike *Costa*, counsel's failure to object to the testimony of appellant's post-arrest silence caused no prejudice to appellant. Thus, there was no ineffectiveness and this issue is without merit.

Accordingly, having found no merit to appellant's arguments on appeal, we find that the PCRA court properly declined to hold an evidentiary hearing and also properly denied appellant relief as to his petition.

Resp., Ex. C, pp. 3-8; Commonwealth v. Frazier, 986 A.2d 1253 (Pa. Super. Sept. 23, 2009).

On April 15, 2010, Attorney Rose filed the instant Petition for Writ of Habeas Corpus on Petitioner's behalf, containing the same claims as he presented on appeal to the Superior Court from the denial of the PCRA petition. See Dkt. No. 1. On October 21, 2011, the Honorable R. Barclay Surrick referred the Petition to the undersigned for preparation of a Report and Recommendation. On February 17, 2012, the Response to the Petition was filed, and on February 23, 2012, Petitioner's counsel filed a Reply to the Response. See Dkt. Nos. 8, 9.

9

## II.    STANDARD OF REVIEW.

### A.    Petitions for Writ of Habeas Corpus.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a writ of habeas corpus for a person serving a state court sentence shall not be granted unless (i) the state court's resolution of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and (ii) the claim is exhausted.[3] See 28 U.S.C. § 2254(d)(1); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996). "As long as the reasoning of the state court does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002) and Woodford, 537 U.S. 19).

---

[3]    Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition. See Anderson v. Harless, 459 U.S. 4, 7 (1982). If a petition's claims have not been exhausted, and a petitioner is time-barred from presenting those claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits. 28 U.S.C. § 2254(b)(1)(A); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

However, a procedurally defaulted claim may still succeed where a petitioner can show either (i) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749 (1991). Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002) (quoting Coleman, 501 U.S. at 753). Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage. United States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995); Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir. 2001). The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327.

An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. Williams v. Taylor, 529 U.S. 362, 407 (2000). Clearly established federal laws are the holdings, not the dicta of the Supreme Court. Id. at 390.

**B.  Ineffective Assistance of Counsel.**

Claims for ineffectiveness of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984).[4] Under Strickland, counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In addition, a petitioner must prove prejudice. In order to do so, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable." Id. Thus, a petitioner must show a reasonable probability that, but for counsel's "unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome." Id. at 694. This determination must be made in light of "the totality of the evidence before the judge or jury." Id. at 695.

---

[4]    In Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the United States Supreme Court reaffirmed the continued applicability of the Strickland standard in federal habeas corpus cases. See also Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

11

The United States Court of Appeals for the Third Circuit has cautioned that "[o]nly the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Beuhl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527 U.S. 1050 (1999) (quoting U.S. v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)). Under the revised habeas corpus statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996). Recently, the Supreme Court acknowledged that "[s]urmounting Strickland's high bar is never an easy task." Premo v. Moore, 131 S. Ct. 733, 739 (2011) (quotation omitted). The Supreme Court explained that the relevant "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. at 740 (citing Strickland, 466 U.S. at 690).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation. Petitioner must also show that the prosecutor's acts so infected the trial as to make his conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987)(citation omitted). Petitioner must show that he was deprived of a fair trial. Smith v. Phillips, 455 U.S. 209, 221 (1982); Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993) (citations omitted) (stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

Where the state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1). If a state court has already rejected an ineffective-assistance claim, a federal court may grant

12

habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1).  Where the state court's application of governing federal law is challenged, it must be

shown to be not only erroneous, but objectively unreasonable.  Yarborough v. Gentry, 540 U.S.

1, 4, 124 S. Ct. 1 (2003) (*per curiam*) (citations omitted).  The Supreme Court recently

elaborated on this standard:

> Establishing that a state court's application of Strickland was unreasonable under
> §2254(d) is all the more difficult.  The standards created by Strickland and §
> 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320,
> 333 n. 7, 117 S. Ct. 2059 . . . , and when the two apply in tandem, review is
> "doubly" so, Knowles, 556 U.S. at 123, 129 S. Ct. at 1420.  The Strickland
> standard is a general one, so the range of reasonable applications is substantial.
> 556 U.S. at 123, 129 S. Ct. at 1420.  Federal habeas courts must guard against the
> danger of equating unreasonableness under Strickland with unreasonableness
> under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied Strickland's deferential standard.

Premo, 131 S. Ct. at 740 (citations omitted).

## III.    DISCUSSION.

### A.    Whether Trial Counsel Can Be Held Ineffective for Failing to Call an Exculpatory Eyewitness At Trial.

Petitioner's first claim is that his trial counsel was ineffective for failing to Laura

Garrett, the wife of Commonwealth witness George Medina and an exculpatory eyewitness, to

testify that Petitioner was not one of the gunmen who shot the victim.  Petitioner's PCRA

petition was also based on Petitioner's waiver of his right to call witnesses at trial.  Before the

PCRA court, Petitioner claimed that trial counsel was ineffective for failing to call Ms. Garrett as

a witness at trial to testify that Petitioner had no weapon in his hand when she saw him running

13

from the scene of the shooting and that she two shooters, neither of whom was Petitioner. See Resp., Ex. B, p. 1. In support of his PCRA petition, petitioner submitted an affidavit executed by Laura Garrett averring that she could have testified at trial that he was not the shooter. The PCRA petition was denied without a hearing.

On appeal, the Pennsylvania Superior Court affirmed the PCRA decision and examined Petitioner's statement following a colloquy with the trial court that he did not want to call any witnesses and that he "absolutely" agreed with this counsel's advice not to call any witnesses. Resp., Ex. C, pp. 3-5. The Superior Court noted that Petitioner told the trial court that he had discussed calling available witnesses with trial counsel and that Petitioner personally decided not to present any witnesses. See Id.(citing N.T., Vol. 3 at 42.) During a colloquy held by Judge Kane, the trial judge, which is set forth on page six of this Report and Recommendation, Petitioner indicated that he had knowingly chosen not to testify, there were witnesses he could call, it was his decision not to call witnesses, he made the decision of his own free will, no threats or promises were made to get him to not call witnesses, and he discussed it with his attorney and it is what they both decided upon. Id.(quoting N.T., Vol. 3 at 42.) Based on this testimony, the Superior Court concluded that Petitioner's personal waiver of his right to call witnesses precluded him from showing that his counsel was ineffective for not calling Ms. Garrett. Petitioner's counsel contends, nonetheless, that the record shows that Petitioner did not state that he had discussed with counsel whether he should present specific defense witnesses and none, including Ms. Garrett, were identified during the colloquy. Counsel also submits, without citing authority for support, that it was both unreasonable and erroneous for the Superior Court to conclude that the Petitioner knowingly, voluntarily and intelligently waived his right to call Laura

14

Garrett as a defense eyewitness at trial. See Reply, p. 7.

Petitioner contends that he is entitled to relief because Ms. Garrett was in existence and was available and present for testimony at the time of trial, trial counsel was aware of her, she was prepared to testify in the Petitioner's behalf, and the omission of her testimony was prejudicial to Petitioner's defense. Reply, p. 7. Petitioner notes that at trial, the Commonwealth presented the testimony of Juan Carlos Colon, who testified that he saw Petitioner along with two unknown males chase Mr. Oquindo and repeatedly fire gunshots at him. Id. at 7-8 (citing N.T., 5/5/04 at 75-77.) The Commonwealth also presented testimony of Wanda Figueroa, Mr. Oquindo's fiancee, who stated that she saw two men chasing Mr. Oquindo but she did not identify Petitioner as either of these men. Id. at 8 (citing N.T., 5/4/04 at 167, 172.) Finally, the Commonwealth presented the testimony of George Medina, Ms. Garrett's husband, who testified that he witnessed two males chase Mr. Oquindo, neither of whom he identified as Petitioner. Id. (citing N.T., 5/5/04 at 41-42, 64.) Mr. Medina also testified that Ms. Garrett was present at the time of the shooting. Id. (citing N.T., 5/5/04 at 15.) Petitioner notes that trial counsel rested without presenting any witnesses on his behalf and his defense in his closing argument was that Mr. Colon's inculpatory testimony was insufficient and should not be accepted by the jury. Id. (citing N.T., 5/5/04 at 49, 51, 52, 63, 69-71.)[5] Petitioner notes that the prosecution defended Mr. Colon's credibility in its closing argument. Id. (citing N.T., 5/5/04 at 83, 103.)[6] Petitioner contends that if Ms. Garrett's testimony had been presented to the jury, it could have formed the basis for reasonable doubt as to Petitioner's guilt, would have undercut

---

[5]     The citation is for the third day of trial held on May 6, 2004, not on May 5, 2004.

[6]     Id.

15

the testimony of Juan Carlos Colon and may have caused the jury to differently view otherwise unconvincing testimony by Ms. Figueroa and Mr. Medina.

Petitioner's counsel cites <u>Bigelow v. Haviland</u>, 576 F.3d 284, 289, *rehearing denied*, 582 F.3d 670 (6th Cir. 2009), in which the defendant told his counsel about an alibi witness that placed him 150 miles from the crime scene and the names and whereabouts of other witnesses, asking counsel to further investigate the other witnesses, which counsel refused to do. Federal habeas relief was approved for the defendant since the verdict might have been different. Petitioner's counsel also cites <u>Rolan v. Vaughn</u>, 445 F.3d 671, 683 (3d Cir. 2006), in which the Third Circuit held that a state appellate court's factual finding that a possible self-defense witness was not willing to testify on a habeas petitioner's behalf was objectively unreasonable where counsel failed to investigate possible self-defense witnesses.

Both of these cases involve defense counsel's failure to investigate witnesses, and in the instant case, Petitioner is claiming ineffective assistance for failure to call a witness, not a failure to investigate. Thus, neither <u>Bigelow</u> nor <u>Rolan</u> are applicable to an analysis of ineffective assistance of counsel in the instant case because in her affidavit, Ms. Garrett stated that she would have testified at the PCRA hearing and that she conveyed her proposed eyewitness exculpatory testimony to trial counsel yet counsel told her that her testimony was not needed. This information points to a reasonable conclusion that trial counsel concluded that Ms. Garrett's testimony would not be helpful or rejected Ms. Garrett's proposed testimony for strategic reasons. As Respondents correctly note, under <u>Strickland</u>, an informed, strategic decision by trial counsel is "virtually unchallengeable." Resp., p. 8 (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Henderson v. DiGuglielmo</u>, 138 Fed. Appx. 463, 469 (3d Cir. 2005)

16

(non-precedential)(decision not to present certain witnesses is "precisely the sort of strategic decision Strickland protects against second-guessing")(internal quotation omitted)).

Respondents contend that the Superior Court's adjudication of this claim on the merits renders applicable the habeas statute's deferential standard of review. Resp., p. 6 (citing Harrington v. Richter, 131 S.Ct. 770, 784 (2011)). Respondents also note that the trial record strongly suggests that trial counsel had ample reason for declining to call Ms. Garrett because, as the PCRA court noted, Ms. Garrett's proffered assertion that Petitioner was not one of the two men who shot Mr. Oquindo would have been cumulative of the testimony of her husband, George Medina. Mr. Medina testified that he called police in a 911 call at which time he identified Petitioner as one of the perpetrators. Reply, p. 9 (citing N.T., 5/5/04 at 28.) However, Mr. Medina also testified at trial that he saw two shooters, neither of whom was Petitioner, recanting what he had previously told police. Resp., p. 8 (citing N.T., Vol. 2 at 20-24.)[7] Respondents argue that Ms. Garrett's testimony would have posed risks to Petitioner's defense because she injured herself while avoiding bullets fired at Mr. Oquindo and she could be heard moaning in pain on the 911 call made by Mr. Medina which inculpated Petitioner in Mr. Oquindo's murder.[8] Id. at 8-9 (citing N.T., Vol. 2 at 28-30.) If Petitioner's counsel had called Ms. Garrett to testify, the prosecution could have played the 911 tape during cross-examination, which would have highlighted Mr. Medina's initial statement to police regarding Petitioner's role in the shooting. Id. at 9. In addition, the prosecution could have highlighted an obvious reason

---

[7]     The transcript for the second day of trial held on May 5, 2004 is incorrectly labeled Volume 1. Respondents cite the May 5, 2004 transcript as Volume 2.

[8]     On March 15, 2003, Ms. Garrett was nine months pregnant with Mr. Medina's child. Resp., p. 8.

17

for a possible bias by Ms. Garrett and Mr. Medina's recanted testimony, that Petitioner was close friends with Mr. Medina and Petitioner knew where their family lived. Id. at 9 (citing N.T., Vol. 2 at 12, 65, 71, 78-80, 159-60, 161-62.)

Petitioner has not shown that the Superior Court's rejection of his ineffective assistance of counsel claim for failure to call Laura Garrett was objectively unreasonable. As such, this claim must be denied.

### B.  Whether Trial Counsel Was Ineffective for Failing to Object to a Reference to Petitioner's Post-Arrest Silence.

Petitioner also claims that his trial counsel was ineffective for failing to object at trial to a police reference to Petitioner's post-arrest silence. Officer Gary Zieminski, the arresting officer, testified that he arrested Petitioner on April 11, 2003, on the charge of Murder. On cross-examination by Petitioner's counsel, Officer Zieminski testified that when arrested, Petitioner made no effort to flee police. On redirect examination, the prosecutor asked "What was his reaction when you said you were taking him to homicide?" Officer Zieminski responded that Petitioner "didn't say anything." Petitioner's trial counsel did not object to this question, and Petitioner contends that trial counsel's failure to object violated his constitutional rights even though he did not testify at trial. See Pet., p. 9. In addition, Petitioner contends that this error was not harmless. Id.

Petitioner presented this argument in his PCRA petition. On PCRA review, the Pennsylvania Superior Court rejected this claim, concluding that counsel's failure to object "caused no prejudice" to Petitioner, even assuming that Officer Zieminski's testimony was improper. Resp. Ex. C at 8. Petitioner contends that:

18

trial counsel omitted a course of arguable merit, that an objection and/or request for an appropriate cautionary instruction, in the face of the prosecutor's bringing out through the re-direct-examination of Officer Zieminski that the Petitioner, after having been arrested, refused to make a statement, which constituted a clear violation of this Petitioner's federal and state constitutional right to remain silent in the face of an official accusation without penalty when brought to trial for that charge.

Reply, p. 11.

Petitioner focuses this portion of his Petition on counsel's alleged ineffectiveness for failure to object or ask for an appropriate cautionary instruction. However, the Superior Court explained that the Petitioner remained silent at trial, choosing not to testify, and the trial court "specifically instructed the jury that it was to make no adverse inference from this choice to remain silent." Resp. Ex. C at 7 (citing N.T., 5/6/04 at 134-135). Petitioner does not acknowledge the trial court's instruction. As Respondents correctly note, reviewing courts must presume the jury followed its instructions, and Petitioner has not pointed to anything in the record that suggests the jury was incapable of doing so. Resp. at 13 (citing Greer v. Miller, 483 U.S. 756, 766, n.8 (1987)(presuming jury will follow court's instructions regarding defendant's right to remain silent)). Thus, although counsel did not object or ask for a cautionary or curative instruction, the trial court nonetheless provided such instruction to the jury.

As the PCRA court pointed out, trial counsel's questioning of Officer Zieminski on cross-examination created the impression that Petitioner was fully cooperative and thus invited the prosecutor's follow-up question on re-direct. Resp., Ex. B at 2. Having opened the door to the prosecutor's question and the officer's answer, counsel had no legitimate basis for objecting. Com. v. DiNicola, 866 A.2d 329, 335-336 (Pa. 2005) (prosecutor's elicitation of testimony that defendant refused interview was fair response to defense counsel argument); see

19

also United States v. Robinson, 485 U.S. 25, 32-34 (1988) (Fifth Amendment does not bar prosecutor from using defendant's failure to testify as response to argument of defense counsel). The Superior Court concluded, even assuming that Officer Zieminski's answer was improper, that there was no reasonable probability that an objection by counsel would have resulted in a different verdict. Resp. Ex. C at 7-8. As the Superior Court observed, the reference to Petitioner's silence was "fleeting" and had no bearing on Petitioner's credibility because Petitioner never gave any statements or testimony regarding the murder. Id. at 7. Officer Zieminski did not elaborate on his answer and the prosecutor did not ask any follow-up questions or make any use of Officer Zieminski's statement during closing arguments. Petitioner cannot show that the Superior Court's rejection of his second Strickland claim was contrary to, or an unreasonable application of, clearly established federal law. See Greer, 483 U.S. at 764-765 (no Doyle violation occurs if the defendant's post-Miranda silence was not submitted to the jury as evidence from which it could draw an inference of guilt). Petitioner has not identified any decision of the PCRA court or the Superior Court which is contrary to, or an unreasonable application of, the Sixth Amendment. Petitioner, therefore, does not meet his burden of proving ineffective assistance of counsel and this claim must be denied.

## III.    CERTIFICATE OF APPEALABILITY.

If the Court dismisses Petitioner's claims, he can only obtain a certificate of appealability if he makes "a substantial showing" that he was denied a constitutional right. 28 U.S.C.A. § 2253(c) (West 2006). If the Court rejects his claims on the merits, he must show that reasonable jurists would find the Court's assessment of them debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner's claims both lack merit and no reasonable jurist

20

could conclude otherwise, therefore any certificate of appealability should be denied..

For all of the foregoing reasons, I make the following:

## **RECOMMENDATION**

AND NOW, this   12th    day of September, 2012, IT IS RESPECTFULLY

RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an evidentiary

hearing.  There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  <u>See</u> Local

Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.


BY THE COURT:


*/s/ Henry S. Perkin*
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE


21



```
RECEIVED
JUL 1 3 2021
U.S.C.A. 3rd. CIR
```

Teri B. Himebaugh, Esq.
PA ID 53603
1400 Spring Garden St. #911
Philadelphia, PA 19130
(484) 686-3279
thimebaughesq@earthlink.net

## IN THE U.S. DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERRY FRAZIER )
    Petitioner )
 )
vs. )
 )
 )   NO:
 )
LAUREL HARRY, SUPERINTENDENT )
SCI CAMP HILL ET AL )
    Respondents

## PETITIONER'S
## MOTION FOR RELIEF PURSUANT TO RULE 60(b)

Petitioner, Jerry Frazier by and through counsel, Teri B. Himebaugh, Esq., hereby files the instant Motion for Relief pursuant to Rule 60 which provides for federal review of a claim based on the discovery of new evidence which could not have been previously discovered through due diligence.

### FACTUAL SUMMARY

On March 15, 2003 Jose Oquindo was murdered. According to the findings of the jury, Petitioner called to Oquindo from outside Oquindo's house saying "Jose, come here, let me talk to you." When Oquindo

1

approached, Petitioner and two other men drew guns and began shooting. Oquindo died from his wounds less than an hour later.

The Commonwealth averred that Juan Carlos Colon was the only eyewitness to the crime. Colon was initially interviewed by detectives on April 1, 2003. During this interview Colon told detectives that he heard "Man" call to Oquindo and ask him, "What's the beef between you and my man?" He then saw "Man" and the other two men draw their guns and fire at Oquindo.

According to the Activity Sheet from that date, Detectives showed Colon a photo array. Colon was however _unable_ to identify anyone from that array.(R.R.6)

Nine days later, Colon was re-interviewed by detectives. He told detectives that he had recently seen Petitioner and Petitioner had told him that he had to 'lay low' because he 'did a homicide' and police were looking for him. (R.R.8-9). During this interview Colon was shown another array from which he identified "Man" as the Petitioner. (R.R.8-9). Colon testified consistent with this second interview at trial. (N.T. 5/5/04 pg. 75-77).

Oquindo's fiancée, Wanda Figueroa, testified at trial that she had seen two men she could not identify chasing Oquindo down the street and firing at him. She was unable to identify who was firing at Oquindo because she had ducked back into the house. (N.T. 5/4/04 pg. 167, 172).

2

Neighbor, George Medina, who had known Petitioner since childhood, testified that he saw two men chase the victim and that Petitioner was <u>not</u> one of the two men. The 911 call placed by Medina was then played for the jury. (N.T. 5/5/04 pg. 41-42, 64). Medina is heard saying that "Man" (a nickname for Petitioner) called him. (N.T. 5/5/04 pg. 28). Medina asserted that his statement was taken out of context.

Medina's wife, Laura Garrett, was at the scene but was <u>not</u> called by either the Commonwealth or the defense. She provided an affidavit in support of a claim of ineffective assistance of counsel raised in the Petitioner's first PCRA petition. Garrett averred that:

> On March 15, 2003 I was present at approximately 11:40 pm in the area of Second and Westmoreland Street, Philadelphia, PA when Jose Oquindo was shot. I knew the Defendant, Jerry Frazier, and had spoken with him briefly just before the shooting. *When the shooting began, everyone in the immediate area began to run. I saw Jerry Frazier among the persons who was running away while the shooting was taking place. I saw that Jerry Frazier did <u>not</u> have a weapon in his hand*. I did see two men who were shooting at Jose Oquindo. These men were wearing black shirts (hoodies) and black pants. Jerry Frazier wore a white shirt with jeans (and a baseball cap). He was not one of the two men that I observed shooting at Jose Oquindo. I did not make a statement to police. . .

(emphasis added)(R.R. 4-5)

The defense rested without presenting any witnesses or any evidence.

3

## PROCEDURAL POSTURE

Petitioner was arrested on April 11, 2003. Petitioner was tried by a jury before the Honorable Harold M. Kane. He was represented at trial by Charles Mirarchi, III, Esquire.

Petitioner was found guilty on September 27, 2004 of first degree murder, criminal conspiracy, and possession of an instrument of crime. Now represented by Jack McMahone, Esquire, Petitioner was sentenced to life in prison.

A timely Notice of Appeal to the Superior Court was filed on September 28, 2004. The judgement of sentence was affirmed on September 21, 2006.

On June 26, 2007, a timely, first PCRA petition was filed on Petitioner's behalf by Burton Rose, Esquire. On August 20, 2008, the PCRA petition was dismissed.

A timely Notice of Appeal was filed to the Superior Court on September 4, 2008. The Superior Court denied relief on September 23, 2009.

A timely Petition for Allowance of Appeal was filed with the Pennsylvania Supreme Court on October 22, 2009. The Petition was denied on March 22, 2010.

On January 14, 2019 a *pro se*, second/subsequent PCRA was filed. Teri B. Himebaugh, Esquire entered her appearance and was given leave to

4

Amend by the Honorable Tracy Brandeis Roman. An amended petition was thereafter filed.

On February 14, 2020 the PCRA Court dismissed the amended petition without granting a hearing.

A Notice of Appeal was timely filed on March 7, 2020. On January 28, 2021 the Superior Court denied relief.

The instant petition, made pursuant to Rule 60(b), has been filed within one year of the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence minus periods of tolling while being exhausted in state court. 28 U.S.C. § 2244(d)(1)(D); Rule 60(c)(1).

## **STANDARD OF REVIEW**

Rule 60(b) allows a party to seek relief from a final judgment for various reasons including fraud, mistake, and newly discovered evidence. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).

To be entitled to relief from a judgment under Rule 60(b)(6), a movant must show the existence of "extraordinary circumstances suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393 (1993). Newly discovered evidence can provide a basis for the finding of extraordinary circumstances. *Moolenaar v. Gov't of the Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987); *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014); *Twelve John Does v.*

5

*District of Columbia*, 268 U.S. App. D.C. 308, 841 F.2d 1133, 1140 (D.C. Cir.1988); *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975); *Landano v. Rafferty*, 897 F.2d 661 (3d Cir. 02/27/1990) (The court cannot conceive of circumstances more "extraordinary" than those presented here, where a prisoner presents evidence that he was convicted without the benefit of exculpatory evidence).

Where a habeas petitioner challenges a judgment applying a procedural default, a motion filed under Rule 60(b) may not be construed as a successive petition, but instead, must be addressed under law governing Rule 60(b) motions. *Gonzalez*, supra at 532 n.4.

**ARGUMENT**

## I. Newly discovered evidence that was not disclosed by the Commonwealth due to governmental interference.

On or about December 6, 2018 Petitioner's sister, Tynisa Lugo saw Darnell Thomas, whom she knew generally from the neighborhood. During their conversation, her brother came up in discussion.

Thomas disclosed to Lugo that he had been a witness to the crime. Lugo had not known that. Lugo asked Thomas if Petitioner could contact him and Thomas agreed. (R.R.1-2). Lugo  gave her brother Thomas' contact information. Petitioner had no idea that Thomas had been present at the time of the crime. Petitioner contacted Thomas and asked him if he could provide an affidavit and he agreed.(R.R.7).

6

In Thomas' January 2, 2019 affidavit he stated the following:

> I was interviewed by the Philadelphia Detective(s) Homicide Unit. I was questioned about the shooting death of a man in year 2003. I was asked if I knew an individual in a photo and I said, yes. He is known by the name of Man-Man. I told the detective that I know Man-Man and that I was on Phillips Street when the individual was shot and *I know the person I saw running from the scene on Phillips Street was not Man-Man*. The detective asked me to sign the statement and ended the interview. I will come to court to testify about this. I told Man-Man's sister to tell her brother to contact me.

(emphasis added)(R.R. 3). Thomas has since provided additional detail in a second verified statement:

> On or about one month following the shooting death of Jose Oquindo, I was taken from 2nd and Ontario Streets in Philadelphia, Pennsylvania by the Philadelphia Homicide Detective(s) and taken to 8th & Race Streets Philadelphia for questioning about the shooting incident. During the questioning, the Police isolated me in a room by myself. The Police told me they are going to charge someone. The Police told me they were going to arrest me for my warrants. I told the Police "you are not going to charge me because I had nothing to do with this case." During the questioning, the Detectives were standing over me and yelling at me.

> Once at the police station I was placed in an interrogation room. I do not remember the exact time I was taken to the police station, but I do know it was still day light when I was in the interrogation room. When I left the police station it was dark nighttime hours. I had no knowledge of time while I was at the Police Station. It felt like I was there for many hours.

> The room had a desk, and two chairs in it. The Detectives took my cell phone from me prior to placing me in the interrogation room. The first thing the Detectives did was ask me if I knew an individual named "Man-Man". The next thing the Detectives did was show me pictures of several individuals and asked, "which one of these pictures is Man-Man"?

7

The Detectives asked me which one of the pictures was "Man-Man"'. I said, "officers I know Man-Man" and I pointed to one of the pictures and identified "Man". The Detectives quickly corrected me and said, "we are not officers, we are Detectives." I then had to address them as "Detectives". The Detectives then asked me if "Man-Man" was one of the shooters in the incident. I responded to the Detectives, **"No Man-Man" was not one of the shooters".**

I explained to the Detectives that I was on 2nd Street. I quickly ran across West Moreland toward my house on 2nd Street when I heard several gun shots. On the way to my house I saw "Man-Man" wearing a white tee shirt, capri type pants and base-ball cap standing on the corner of 2nd Street. **I did not see any weapon in "Man-Man's" hand,** and he was with the "rest of the people" trying to not get shot and to get away from the situation and he ran up 2nd Street.

**I also saw individuals wearing dark "hoodies" running way from the shooting like they were the ones that did the shooing**.

After I ran **past Jerry Frazier** standing on the corner of 2nd Street with a group of other bystanders I continued to run right to my house. When I got to my house I went inside. When I heard the police sirens approaching, I went back outside with my neighbors to see "what was going on".

The Detectives stated to me "they would help me with my traffic violations if I told them the truth about Man-Man and the shooting incident. I told the Detectives that **"Man-Man was not out there shooting no gun."** The Police offered to "help me". I told the Detectives my warrant has nothing to do with this case at all with Man-Man and you cannot help me with my warrants". I The Detectives brought up my traffic violations and threatened me with jail

(emphasis added)(R.R. 14-15).

The above testimony is evidence that the detectives had determined

well prior to Thomas' being interrogated that Petitioner was one of the

shooters. They had pre-determined who the suspects were rather than

8

follow the evidence to the real suspects. Apparently, because Thomas could not help the Detectives make the case against the Petitioner, they either destroyed or hid Thomas' statement. They certainly did not disclose it as they should have pursuant to *Brady*, supra.

## II. Petitioner used due diligence and extraordinary circumstances suggest that Petitioner is faultless in the delay in presenting the instant claim.

The diligence requirement "does not demand a showing that the petitioner left no stone unturned" or that he used the "maximum feasible diligence." *Ramos-Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011); *Munchinski v. Wilson*, Warden of the State Correctional, 694 F.3d 308 (3d Cir. 09/11/2012). Rather, "[t]o determine if a petitioner has been [reasonably] diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011); *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004); *In re Wogenstahl*, 902 F.3d 621, 629 (6th Cir. 2018); *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2000); *Solorio v. Muniz*, 896 F.3d 914, 920-21 (9th Cir. 2018) .

In other words, the diligence inquiry is fact-specific. There are no bright line rules as to what conduct is insufficient to constitute reasonable diligence.

> AEDPA does not impose a one-size-fits-all requirement. Rather, what due diligence requires depends on the circumstances of each petitioner: who he is, what facts he knows, what claim he

9

seeks to bring, and what he can reasonably expect in view of his circumstances and the nature of that particular claim. This conclusion flows from the statutory text and is well settled in the case law of this Circuit and others. It also comports with decisions interpreting identically worded due diligence requirements elsewhere in AEDPA, as well as closely related diligence requirements in the habeas context more generally.

We begin, as is customary, with the text. *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016). The subject matter of § 2244(d)(1)(D) is the "factual predicate" of the habeas claim, meaning the facts "out of which the point of law arises," *Fact*, Black's Law Dictionary (6th ed. 1990); *see also Fact*, Black's Law Dictionary (11th ed. 2019) (noting that by 1899, "predicate fact" meant "[a] fact from which a presumption or inference [of the existence of the claim] arises").

And the trigger for that provision's one-year clock is the date on which those facts "could have been discovered through the exercise of *due diligence*." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). That language is critical. In the law, "due diligence" is a relative term; it is "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *Diligence*, Black's Law Dictionary (6th ed. 1990). Put another way, due diligence is the care "expected from a man of ordinary prudence," which is "measured with reference to the particular circumstances." *Id.* So by its plain terms, § 2244(d)(1)(D) requires us to determine when, in "the particular circumstances" at issue here, we should "expect[]" a "reasonable" petitioner to discover the facts giving rise to a habeas claim.

That is precisely what our case law requires. We have long held "that, to satisfy § 2244(d)(1)(D)'s 'due diligence' standard, a prisoner must exercise 'reasonable diligence in the circumstances.'" *Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)). That inquiry "is context-specific," and "[t]he fact that we require a petitioner in one situation to undertake certain actions does not necessitate that we impose the same burden on all petitioners." *Id.* at 661.

10

> We have also laid down important markers guiding courts in assessing what due diligence requires. "It is not enough," we have cautioned, "that [a petitioner] could have learned about [the factual basis for his claim] by happenstance" or "that [he] could have discovered [it] fortuitously." *Id.* at 660. Nor must a petitioner "continuously monitor [public sources] for [years] . . . on the unlikely chance that he might learn something which would be useful to his case." *Id.* at 661 (internal quotation marks and citation omitted).

> Rather, § 2244(d)(1)(D) requires that we focus on the "reasonable expectations" of someone "in the petitioner's position," because a petitioner will have an obligation to investigate only once he has a "reasonable basis . . . to expect that [investigation] would uncover . . . relevant information." *Id.* In short, unless "the petitioner should be expected to take actions which would lead him to the information," *id.* at 662, his decision not to investigate "[i]s not a failure to exercise due diligence, "[11] *id.* at 661.

*Bracey v. SCI Rockview*, Third Cir. No. 17-1064 (1/20/21).

If a petitioner "did what he reasonably thought was necessary to preserve his rights . . . based on information he received . . . , then he can hardly be faulted for not acting more "diligently" than he did." *Holmes v. Spencer,* 685 F.3d 51, 65 (1st Cir. 2012).

Petitioner was arrested very shortly after the crime occurred. He remained in custody thereafter. Prior to Thomas approaching Petitioner's sister, Petitioner had no idea that Thomas had even been outside at the late hour when the crime occurred. Petitioner did not know until receiving Thomas' affidavit that Thomas had been running from the scene and could definitively state that Petitioner was not one of the shooters.

11

The Commonwealth, however, clearly knew that Thomas was a witness, in that they brought him in to Homicide and took his sworn statement. The Commonwealth ensured however that the defense would not learn about Thomas by not identifying him or providing his statement to the defense during discovery. Petitioner had no reason to believe that the police knew of a witness whom they had not identified or turned the statement over for. Petitioner had the right to rely on the Commonwealth's misrepresentation by omission.

Petitioner cannot under the above circumstances be found to be at fault for not identifying, interviewing, and calling this witness to testify at the trial or for not obtaining his statement. Nor can he be faulted for not seeking Thomas out prior to Thomas' recently approaching Lugo.

Petitioner avers that the Commonwealth interfered with Petitioner's right to due process and a fair trial when it failed to disclose Thomas' and his statement to homicide detectives.

As discussed above, the PCRA Court erred and misapplied the law when it found that Thomas' and his statement were not exculpatory and would not impeach any witnesses. (6/23/20 PCRA Court Opinion, 4).

The U.S. Supreme Court held in *Brady v Maryland* 373 U.S. 83 (1963) that suppression by the prosecution of evidence favorable to an accused violates the Fifth and Fourteenth Amendments of the Constitution where the evidence is material to either guilt or punishment, irrespective of the good

12

faith or bad faith of the prosecution. Id; *United States v. Starusko*, 729 F.2d 256 (3d Cir.1984). "To establish a *Brady* violation, the Petitioner must establish that: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced." *Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

Petitioner avers that the PCRA Court erred in finding that the new evidence is not material and exculpatory. (6/23/20 PCRA Opinion, pg. 4).

Evidence qualifies as material when there is "<u>any</u> reasonable likelihood' it could have "affected the judgment of the jury." *Giglio*, *supra*, at 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (quoting *Napue* v. *Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)).

"Exculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged." *Commonwealth v. Lambert*, 765 A.2d 306, 325 n.15 (Pa. Super. 2000); *Commonwealth v. Redmond*, 577 A.2d 547, 552 (Pa. Super. 1990); *Commonwealth v. Watson*, 512 A.2d 1261, 1266 (Pa. Super. 1986).

Impeachment evidence is also considered "evidence favorable to an accused," and therefore subject to *Brady* because it may make the difference between conviction and acquittal. *Giglio, supra.*

13

The non-disclosed evidence would have provided reasonable doubt

that Petitioner was one of the three men running from the scene with a gun

in his hands.

- "I know the person I saw running from the scene on Phillips Street was not Man-Man"

- "I did not see any weapon in 'Man-Man's' hand"

- "I also saw individuals wearing dark 'hoodies' running way from the shooting like they were the ones that did the shooing".

- "Man-Man was not out there shooting no gun".

(R.R.2-3, 14-15). Evidence that three men – none of whom were the

Petitioner – committed the crime is by its' very nature, exculpatory to the

Petitioner. It provides the evidentiary basis for the jury to find that Petitioner

was not involved in the shooting and supports his consistent claim of actual

innocence.

In a factually similar case, the U.S. Supreme Court, in *Wearry, supra*

held that the new evidence was exculpatory and should have been disclosed

pursuant to Brady. The Court reasoned that even though Wearry had been

present among a group of men, some of whom fired their guns, the new

evidence established that Wearry was not one of the shooters. The U.S.

Supreme Court found that new evidence both material and exculpatory for

purposes of *Brady,* supra.

The non-disclosed evidence would have directly contradicted the

Commonwealth's theory of the case and their prime 'eye' witness, Colon.

14

The non-disclosed evidence could have been used to cast doubt on the reliability and veracity of Colon's otherwise questionable testimony. Notably, the non-disclosed evidence was corroborated by the ballistics evidence, which a jury could find made it more credible than Colon.

The non-disclosed evidence would have additionally helped establish reasonable doubt as to the reliability of the homicide investigation. To prevail on a *Brady* claim, a defendant need not show that he "more likely than not" would have been acquitted had the new evidence been admitted. *Smith* v. *Cain*, 565 U.S. 73, ___-___, 132 S.Ct. 627, 630, 181 L.Ed.2d 571, 574 (2012). He must show only that the new evidence is sufficient to "undermine confidence" in the verdict. Id. The U.S. Supreme Court in *Wearry v Cain*, 136 S.Ct. 1002, 194 L.Ed.2d 78, 84 U.S.L.W. 4125 (2016), found that where the new evidence undermines confidence in the reliability of the verdict, relief is warranted.

Police violate *Brady* when they destroy or fail to preserve exculpatory evidence *regardless of their intention*. *Commonwealth v. Snyder*, 963 A.2d 396, 406 (Pa. 2009).

It is believed and averred that Homicide detectives had Thomas' statement within their custody and control but they and possibly the prosecuting attorney (Gail Fairman, Esq.) chose not to disclose it to the

15

defense. [1] This violated Petitioner's constitutional rights and Rule 305
B(1)(a)(concerning mandatory disclosure of evidence by the
Commonwealth). *Commonwealth v. Redmond,* 577 A.2d 547, 395 Pa. Super.
286 (May 1990); *Brady, supra.*

The discovery cover letter signed by the prosecutor expressly identifies
the names, addresses and statements of "all eyewitnesses". (R.R.11). There
is no reference whatsoever however to Thomas as a witness. Nor was his
statement appended as identified witness' statements were. (R.R.10-11).
While supplemental discovery was also passed by the Commonwealth, it too
failed to identify Thomas and/or contain his statement. (R.R.12-13).

Thus, for all the above reasons, the non-disclosed evidence is
'favorable to an accused', and therefore subject to *Brady*. It could have
made the difference between conviction and acquittal. *Napue v. Illinois*, 360
U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The
Commonwealth's failure to disclose it to the defense violated Petitioner's
constitutional rights. *Brady*, supra.

---

[1]     The fact that the *Brady* material was in the possession of the police
rather than the prosecutor is irrelevant to the Commonwealth's duties to
disclose. Prosecutors must perform their duties under *Brady* in conjunction
with the police, and a *Brady* violation may occur where evidence in the
possession of the police is not disclosed to the defendant, even if the
prosecutor did not know about it. *Commonwealth v. Burke*, 781 A.2d 1136
(Pa. 2001); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Commonwealth v.
Sullivan*, 820 A.2d 795, 802 (Pa. Super. 2003).

16

The Petitioner has thus met his burden of rebutting the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

## III. <u>Use of the newly discovered evidence</u>

While it may have been a requirement in State Court to establish that the new evidence could not have been used solely for purposes of impeachment, that is an entirely irrelevant inquiry for purposes of a Rule 60(b) proceeding. The fact that the new evidence would serve to impeach Hiller is entirely immaterial to the Rule 60(b) analysis. *Bracey v. SCI Rockview*, Third Cir. No. 17-1064 (1/20/21); *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (U.S. 04/29/1998).

Moreover, even if the new evidence could not be used for purposes of impeachment, Petitioner could still have used the new evidence for substantive purposes.  The instant new evidence is not being presented for the purposes of impeaching a witness who testified at the trial. Rather, it is being proffered as substantive evidence from a heretofore unidentified eyewitness to the crime. It is substantive evidence that someone other than the Petitioner was the third man running from the scene with a gun in his hands. It is relevant, material, and admissible and would help, particularly when coupled with other evidence, establish Petitioner's actual innocence.

17

It is also substantive evidence of prosecutorial misconduct during the police investigation which was not known about and could not be raised at the time of the trial. It would help establish that the investigation was prejudicially tainted and predisposed to inculpate the Petitioner. It could have provided the jury with sufficient basis to find reasonable doubt.

The newly discovered evidence is not cumulative of any evidence presented by the defense at Petitioner's trial. *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 989 (Pa. Super. 2007); *Commonwealth v. Dennis*, 950 A.2d 945 (Pa. 2008).

Colon testified that he saw "Man" and two other men with guns in their hands firing at Oquindo. (N.T. 5/5/04 pg. 75-77; R.R. 8-9). He was the sole evidence presented at trial that Petitioner was the third man with a gun in his hands running after and firing at the victim. Ballistics evidence however only established casings from two weapons.

Oquindo's fiancée, Wanda Figueroa, testified at trial that she had seen two (not three) men she could not identify chasing Oquindo down the street, firing at him. She did not identify either of these two men as the Petitioner.

Neighbor, George Medina also saw two men chase the victim down the street holding guns. He testified that Petitioner was not either to those men . (N.T. 5/5/04 pg. 41-42).

Both Figueroa and Medina knew the Petitioner from the neighborhood. They would have immediately recognized him if they had seen him firing a gun at the victim.

In order to reconcile Colon's testimony with Figueroa and Medina's testimony, the jury had to have concluded that the third shooter was there, but running separate from the other two shooters.

The defense did not present _any_ witnesses or _any_ evidence.[2] The jury was thus, left to assume that the third shooter was there, but that Figueroa and Medina just didn't see him.

Thomas' testimony would have been the _only_ evidence presented to the jury establishing that the third shooter running from the scene while firing at the victim was not the Petitioner. It would have directly contradicted the Commonwealth's theory of the case and Colon's questionable testimony. It would have also been corroborated by the ballistics evidence.

## IV. **Prejudice**

The PCRA Court rejected this new evidence claim because, in its opinion, "(d)efendant was not prejudiced by the Commonwealth's suppression because Thomas' statement does not impact the evidence against Defendant" (6/23/20 PCRA Court Opinion, pg. 4).

---

2       Notably, Laura Garrett was not called by the defense so the jury did not know that she saw only two men running after and shooting at the victim. She saw Petitioner also running from the scene but he did not have a gun in his hand. (R.R.4-5).

As set forth above and incorporated herein, Thomas' testimony, had it been known about, would have been both material and highly exculpatory to the defense.

Petitioner further contends that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, 57 (1987), quoting *United States v. Bagley*, supra 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494.

Thomas knew the Petitioner from the neighborhood for a lengthy period of time and would be able to recognize and distinguish him from someone else if he saw him. He was able to identify the Petitioner as the male in the photo that the detectives were showing him but made it crystal clear that Petitioner was not the shooter he saw running from the scene. Had the jury heard an eyewitness other than Colon testify that the third shooter was not the Petitioner, they would have been unable to simply assume that the third shooter was the Petitioner. The jury would have also had a basis on which to reject Colon's testimony.

Had counsel been aware of the existence of Thomas and what he told detectives, it is more likely than not that counsel would have called Thomas to testify on behalf of the defense.

20

By itself, the newly discovered evidence would have provided the jury with reasonable doubt. However, when coupled with the exculpatory evidence previously presented in the first PCRA proceeding to this court from Laura Garrett, the jury would have had to reject Colon's trial testimony in its' entirety.

A conviction violates due process of law if it is based on unreliable evidence. The Fourteenth Amendment Due Process Clause gives a defendant the constitutional right to a reliable and trustworthy conviction, *Stovall v. Denno*, 388 U. S. 293 (1967); *Watkins v. Sowders*, 449 U.S. 341, 347 (1981) ("[it] is the reliability of identification evidence that primarily determines its admissibility"); *Foster v. California*, 394 U.S. 440 (1969); *Green v. Georgia*, 442 U.S. 95 (1979); *Gardner v. Florida*, 430 U.S. 349 (1977).

"The integrity of the adversary process depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance." *Taylor v Illinois*, 108 S. Ct. 646, 484 U.S. 400 (U.S. 01/25/1988). Here given the newly discovered testimony from the Dooley case, Hiller's testimony could hardly be considered sufficiently reliable to not violate Petitioner's due process rights.

21

Moreover, the other evidence of record inculpating the Petitioner was
hardly so overwhelming that it would overcome the loss of the unreliable
evidence

A conviction – regardless of whether from plea or jury verdict- that is
based on unreliable evidence cannot be sustained. *Stovall*, supra; *Taylor*,
supra.

Petitioner respectfully requests that this Court grant him appropriate
relief including but not limited to the grant of a hearing on any contested
issues.

> To the limited extent that federal evidentiary hearings are
> available under AEDPA, they ensure that petitioners who
> diligently developed the factual basis of their claims in state
> court, discovered new evidence after the state-court proceeding,
> and cannot return to state court retain the ability to access the
> Great Writ. See ante, at 2 (ALITO, J., concurring in part and
> concurring in judgment). "When Congress codified new rules
> governing this previously judicially managed area of law, it did
> so without losing sight of the fact that the 'writ of habeas corpus
> plays a vital role in protecting constitutional rights.' " *Holland v.
> Florida*, 560 U. S. ___, ___ (2010) (slip op., at 16) (quoting
> *Slack v. McDaniel*, 529 U. S. 473, 483 (2000)). Allowing a
> petitioner to introduce new evidence at a hearing in the limited
> circumstance permitted by §2254(e)(2) does not upset the
> balance that Congress struck in AEDPA between the state and
> federal courts."

*Cullen v. Pinholster*, No. 09-1088 (U.S. 04/04/2011)(Breyer concurring and
dissenting opinion).

Contrary to the PCRA Court's contention, the request for a hearing on
this claim was not 'patently frivolous'. (6/23/20 PCRA Opinion p. 5). "The
jury's estimate of the truthfulness and reliability of a given witness may well

be determinative of guilt or innocence." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The PCRA Court erred in weighing the credibility of Thomas against that of Juan Carlos Colon without first conducting a hearing where Thomas' credibility could be properly assessed. (6/23/20 PCRA Opinion p. 4).

Petitioner ultimately seeks the vacating of his conviction by means of withdrawal of his plea. Petitioner avers that it would be manifestly unjust to deny him this relief.

Respectfully submitted,

/s/ *Teri B. Himebaugh, Esq.*

Teri B. Himebaugh, Esq.
Attorney for Petitioner

## **CERTIFICATE OF SERVICE**

I certify that on this 14th day of May 2021, I electronically filed a copy of the foregoing Rule 60 petition with the Clerk of Courts using PACER/ ECF and/or email, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

District Attorney of the County of Philadelphia

In addition, I mailed true and correct copies of said Petition to the following:

Philadelphia District Attorney's Office
3 S Penn Square
Philadelphia, PA 19107

Jerry Frazier FZ0635
SCI Retreat
660 State Rt. 11
Hunlock Creek, PA 18612

/s/ *Teri B. Himebaugh, Esq.*

Teri B. Himebaugh, Esq.
PA ID 53603

24

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of July 2021, I filed a copy of the requested submissions pursuant to the Court's June 17, 2021 on the following:

Philadelphia District Attorney's Office
3 S Penn Square
Philadelphia, PA 19107

Jerry Frazier FZ0635
SCI Retreat
660 State Rt. 11
Hunlock Creek, PA 18612

/s/ *Teri B. Himebaugh, Esq.*

Teri B. Himebaugh, Esq.
PA ID 53603